IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GAGIK T., <br><br> Petitioner, <br><br> vs. <br><br> CHRISTOPHER CHESTNUT, WARDEN, CALIFORNIA CITY CORRECTIONAL CENTER, *et al.*, <br><br> Respondents. | Civil No. 1:26-cv-02839-MWJS <br><br> ORDER DENYING MOTION FOR TEMPORARY RESTRAINING ORDER, GRANTING RESPONDENTS' MOTION TO DISMISS, AND DISMISSING THE PETITION FOR WRIT OF HABEAS CORPUS WITHOUT PREJUDICE <br><br> A# 216-809-968 |

**INTRODUCTION**

Petitioner Gagik T.[1] is detained at the California City Detention Facility

("CCDF") pending the resolution of his removal proceedings.  He seeks a writ of habeas

corpus under 28 U.S.C. § 2241 ("habeas petition") and a temporary restraining order

("TRO") directing his immediate release from immigration custody.  Dkt. No. 1.

Respondent moves to dismiss on the ground that Petitioner has not exhausted his

available administrative remedies:  having received a bond hearing before an

immigration judge, resulting in an adverse ruling, Petitioner filed this action in federal

court six days before his deadline to appeal that ruling to the Board of Immigration

---

[1]     For reasons previously explained in *Sergio D.L.S. v. Warden, Cal. City Corr. Ctr.*, No. 1:26-cv-02821-MWJS, 2026 WL 1049713, at *1 n.1 (E.D. Cal. Apr. 17, 2026), only Petitioner's first name and the initials of his last name are used in this order.

Appeals ("BIA").  Dkt. No. 7.  For the reasons that follow, the court denies Petitioner's motion for a TRO and grants Respondent's motion to dismiss the habeas petition.

## BACKGROUND

Petitioner entered the United States at Miami, Florida, on January 17, 2020, on a B-2 visitor visa and was admitted through July 16, 2020.  Dkt. No. 1, Exh. 1.  He did not depart upon the expiration of that period.  Dkt. No. 7, at pg. 2.  Before his authorized stay expired, on April 17, 2020, Petitioner filed an affirmative application for asylum and withholding of removal (Form I-589) with the USCIS San Francisco Asylum Office.  Dkt. No. 1 at pg. 6; Dkt. No. 1, Exh. 2.  That application remains pending.  *Id*.

On March 2, 2026, officers from the Sacramento ICE Enforcement and Removal Operations office arrested Petitioner in Sacramento.  Dkt. No. 1, at pg. 2.  ICE issued a Notice to Appear the same day, charging Petitioner with removability under INA § 237(a)(1)(B) for remaining in the United States beyond his authorized period of admission.  Dkt. No. 7, Exh. B.  Petitioner was taken to CCDF, where he remains in custody.  Dkt. No. 1, at pg. 2.

On March 17, 2026, Petitioner appeared before an immigration judge ("IJ") at the Adelanto Immigration Court and requested a custody redetermination pursuant to 8 C.F.R. § 1236.  Dkt. No. 1, Exh. 3.  After full consideration of the evidence, the IJ denied bond, finding Petitioner to be a "significant flight risk such that no amount of bond or conditions would secure his future court appearances."  *Id*.  In reaching that

2

determination, the IJ considered, among other things, the absence of a stable

employment history, the lack of legal status among Petitioner's immediate family

members in the United States, and deficiencies in the evidentiary record concerning

Petitioner's proposed sponsor.  *Id*.  Both parties reserved their right to appeal.  *Id*.

Petitioner's deadline to appeal the IJ's bond ruling to the Board of Immigration Appeals

("BIA") was April 20, 2026.  Dkt. No. 1, at pg. 36, Dkt. No. 7 at pg. 2.

Petitioner filed the instant habeas petition and motion for a TRO on April 14 and

19, respectively—just days before his BIA appeal deadline and without having filed an

appeal.  Dkt. No. 1; Dkt. No. 7 at pg. 1.  His removal proceedings remain ongoing; a

merits hearing previously scheduled for May 15, 2026, was continued on April 22, 2026,

at his request.  Dkt. No. 7, Exh. C.  Respondent filed the pending motion to dismiss on

April 25, 2026.  Dkt. No. 7.  The matter is now fully briefed and neither party has

requested oral argument.

## DISCUSSION

### A.   Motion for Temporary Restraining Order

The standard governing a motion for a TRO is, substantively, the same as the

standard governing a preliminary injunction.  *See Stuhlbarg Int'l Sales Co. v. John D.

Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001).  A party seeking such extraordinary

relief must demonstrate a likelihood of "success on the merits," a likelihood of

"irreparable harm" in the absence of relief, that the balance of equities favors

intervention, and "that an injunction would serve the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Likelihood of success on the merits is the most important of these factors. *Simon v. City & Cnty. of San Francisco*, 135 F.4th 784, 797 (9th Cir. 2025). If a party cannot show a likelihood of success on the merits of a claim, the party must at least show "serious questions" going to the merits of the claim, along with showing that the other three *Winter* factors are satisfied. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127 (9th Cir. 2011).

As discussed below, Petitioner has failed to exhaust his available administrative remedies before seeking federal habeas relief. That failure forecloses a finding of likelihood of success on the merits—and serious questions going to those merits—and is, standing alone, sufficient to defeat the request for a temporary restraining order. Petitioner's motion for a TRO is therefore DENIED.

### B.    Motion to Dismiss

Before a district court may reach the merits of a habeas petition challenging immigration detention, it must consider whether the petitioner has exhausted available administrative remedies. *See Castro-Cortez v. INS*, 239 F.3d 1037, 1047 (9th Cir. 2001), *abrogated on other grounds*, *Fernandez-Vargas v. Gonzalez*, 548 U.S. 20 (2006). Where a petitioner has failed to do so, a court "ordinarily should either dismiss the petition without prejudice or stay the proceedings until the petitioner has exhausted remedies."

4

*Hernandez v. Sessions*, 872 F.3d 976, 988 (9th Cir. 2017) (citing *Leonardo v. Crawford*, 646 F.3d 1157, 1160 (9th Cir. 2011)).

To be sure, both parties acknowledge that the exhaustion requirement in this context is prudential rather than jurisdictional.  *Id*; Dkt. No. 1, at pg. 4, Dkt. No. 7, at pg. 4.  Accordingly, the court must determine whether exhaustion here should be excused. That determination turns on the three considerations identified in *Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007):  (1) whether agency expertise is "necessary to generate a proper record and reach a proper decision"; (2) whether relaxing the requirement would invite "deliberate bypass of the administrative scheme"; and (3) whether "administrative review is likely to allow the agency to correct its own mistakes and forestall the need for judicial review."  *Hernandez*, 872 F.3d at 988.

It is undisputed that Petitioner received a § 1226(a) bond hearing before the IJ, who issued a written decision denying bond.  Dkt. No. 1, Exh. 3.  Where, as here, a petitioner has already received a bond hearing and the administrative remedy remaining is a BIA appeal, agency expertise is not strictly necessary to generate a further record for decision.  *See Okoth v. Kaiser*, No. 1:25-cv-01936-KES-SAB, 2026 WL 45199, at *3 (E.D. Cal. Jan. 7, 2026); *Kithima v. Albarran*, No. 1:26-cv-1659-DJC-JDP, 2026 WL 1078236, at *2 (E.D. Cal. Apr. 21, 2026).  The first *Puga* factor therefore weighs against requiring exhaustion.

The second and third factors, however, weigh strongly in favor of requiring it. Section 1226(a) and its implementing regulations establish a comprehensive process for custody determinations, including the right to a bond hearing before an IJ and appellate review by the BIA. *See* 8 C.F.R. §§ 1003.19, 1236.1(d). The Ninth Circuit has held that these procedures are facially constitutional. *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1213 (9th Cir. 2022). Petitioner participated in the bond hearing process, received an adverse ruling, and rather than appeal that ruling to the BIA—with six days remaining before the deadline—filed the instant action. Dkt. No. 1; Dkt. No. 7 at pg. 2. On the second factor, therefore, granting federal habeas relief under these circumstances would permit Petitioner to bypass the appellate tier of the administrative scheme Congress established. And allowing Petitioner to do so here would invite other detainees to do the same. *See Kithima*, 2026 WL 1078236, at *2–3; *see also Martinez v. Scott*, No. 2:25-cv-1538-TSZ-GJL, 2025 WL 2689844, at *5 (W.D. Wash. Aug. 27, 2025). On the third factor, the BIA has authority to review the IJ's bond determination, including its factual findings and application of the applicable legal standards. *See* 8 C.F.R. § 1003.1(d)(3)(i)–(ii). Had Petitioner prevailed on appeal, this litigation would have been entirely unnecessary. Had the BIA affirmed, a more fully developed record would be available to support any judicial review that followed. *Kithima*, 2026 WL 1078236, at *3. The second and third *Puga* factors therefore favor requiring exhaustion.

C.       **Waiver of the Exhaustion Requirement**

Even where the *Puga* factors point toward exhaustion, a court retains discretion to excuse that requirement where administrative remedies are inadequate or inefficacious, pursuit of those remedies would be a futile gesture, irreparable injury would result, or the administrative proceedings would be void.  *Hernandez*, 872 F.3d at 988 (quoting *Laing v. Ashcroft*, 370 F.3d 994, 1000 (9th Cir. 2004)).  Petitioner advances two principal grounds for waiver:  first, he argues that exhaustion would be futile, and second, he alleges irreparable harm arising from the conditions of his confinement.  Dkt. No. 1 at pg. 4, Dkt. No. 3, at pg. 3.  But neither is persuasive here.

On futility, Petitioner argues that a BIA appeal would be meaningless because, he contends, immigration court bond hearings are systemically compromised.  In support of this proposition, he cites declarations from former IJs describing institutional pressure, and district court decisions from other jurisdictions casting doubt on the fairness of bond proceedings.  Dkt. No. 1 at pgs. 15–18; Dkt. No. 8, at pg. 9.  These submissions raise serious concerns, but only of a generalized nature.  And generalized contentions of this sort do not establish futility:  the futility exception requires a showing that the available administrative remedy is inadequate or unavailing as applied to a petitioner's own case.  *See Kithima*, 2026 WL 1078236, at *3.  Petitioner has not offered any evidence or argument of a more particularized nature; he has not shown that the bond hearing in his case was compromised in any way.  And, indeed, the

7

record here suggests the opposite—as noted, the IJ in this case fully considered the evidence, and made specific findings of fact to support the conclusion that Petitioner was a significant flight risk.  Dkt. No. 1, Exh. 3.  Nor has Petitioner shown that the BIA would lack the authority or the practical ability to review and, if warranted, correct the IJ's bond ruling.  The BIA in fact has precisely that authority, *see* 8 C.F.R. § 1003.1(d)(3), and Petitioner points to no case-specific barrier to obtaining meaningful review.  *See Kithima*, 2026 WL 1078236, at *3; *Martinez*, 2025 WL 2689844, at *6.  Nor are Petitioner's generalized arguments about BIA review strong enough to show that *no* petitioner would get a fair hearing there.  Put differently, Petitioner has made serious generalized allegations about the agency review process, but he has not done enough to show that any of those concerns would have made an appeal in his own case futile.

On irreparable harm, Petitioner describes serious concerns about his conditions of confinement at CCDF, including what he characterizes as inadequate management of his diabetes and heart conditions, an inappropriate dietary regimen, and noise levels producing debilitating migraines.  Dkt. No. 1 at pgs. 7–9 (citing *Gomez Ruiz*, No. 3:25-cv-09757-MMC, 2026 WL 851980 (N.D. Cal. Mar. 27, 2026)); *see also* Dkt. No. 1 at pgs. 19–22.  These are serious allegations.  Conditions-of-confinement claims, however, are not cognizable in a habeas proceeding and must instead be raised in a civil rights action.  *Crawford v. Bell*, 599 F.2d 890, 892 (9th Cir. 1979); *Brown v. Blanckensee*, 857 F. App'x 289, 290 (9th Cir. 2021).  Because the appropriate remedy for such claims, if proven, is not

8

release from custody, they cannot serve as the basis for excusing the prudential exhaustion requirement applicable to a habeas petition challenging detention under § 1226(a)—at least when, as here, Petitioner has not shown that those review procedures are or would be deficient in his own case.

Because the *Puga* factors weigh in favor of requiring exhaustion here, and because Petitioner has not offered any persuasive argument against doing so, Respondents' motion to dismiss must be granted.  The court's dismissal of this petition is, of course, without prejudice to Petitioner pursuing his conditions-of-confinement claims in an appropriate civil rights proceeding.

## CONCLUSION

For the foregoing reasons, Petitioner's motion for temporary restraining order, Dkt. No. 5, is DENIED.

Respondents' motion to dismiss, Dkt. No. 7, is GRANTED, and the petition for writ of habeas corpus, Dkt. No. 1, is DISMISSED without prejudice.

The Clerk of Court is directed to close this case.

//

//

//

//

//

IT IS SO ORDERED.

DATED:  May 4, 2026, at Honolulu, Hawaiʻi.



/s/ Micah W.J. Smith
_____
Micah W.J. Smith
United States District Judge

---

Civil No. 1:26-02839-MWJS; *Tonian v. Chestnut et al.*; ORDER DENYING MOTION FOR TEMPORARY RESTRAINING ORDER, GRANTING RESPONDENTS' MOTION TO DISMISS, AND DISMISSING THE PETITION FOR WRIT OF HABEAS CORPUS WITHOUT PREJUDICE